## ACTION FOR RECOVERY ON CLAIMS FOR BUILDING A COURT HOUSE.

Common Pleas Court of Cuyahoga County.

ANDREW DALL ET AL V. THE CUYAHOGA COUNTY BUILDING COMMISSION ET AL.

Decided, May 3, 1913.

*Counties—To What Extent Invested With Corporate Capacity—Limitations on Power to Sue and be Sued—Status of County Commissioners—Authority of a Building Commission—Its Members Not Public Officers—Purpose of Appointment—Actions Against Counties —Parties—Misjoinder—Sections 2333, et seq.*

1. The members of a county building commission are not public officers and are without authority to sue or to plead or be impleaded in any case.
2. The presumption of law that public officers will discharge the duties incumbent upon them forbids that they should be regarded as proper parties to an action upon claims accruing against a county in the construction of a court house, and where the county auditor and county treasurer have been made parties to such an action demurrer will lie for misjoinder of parties defendant.

*S. H. Tolles, Richard Inglis* and *Henderson, Quail & Siddall,* for plaintiffs.

*Cyrus Locher* and *F. W. Green,* contra.

FORAN, J.

This is an action by Andrew Dall and William Dall, partners, against the Cuyahoga County Building Commission as a body, and against the individual members thereof, against the board of county commissioners of Cuyahoga county, Charles E. Prestien, auditor, and George E. Myers, treasurer of said county.

A motion has heretofore been filed by defendants to make the petition more definite and certain and to strike out certain language therein, which motion was granted in part by the court and overruled in part. The amended petition was filed April 24, 1913. To this amended petition another motion to strike

the petition from the files has been filed, for the reason that the amended petition fails to comply with the former order of the court. This motion will be overruled, but it is suggested to counsel for the plaintiffs that the words "and especially," on the seventh page of the petition, fifteenth line from the top, and after the word "building," be stricken out. When this is done, the court is of the opinion that the defendants are sufficiently informed as to the nature and character of plaintiff's claim and of what they are expected to meet.

On April 29, 1913, a demurrer was filed by the defendants, that is, by all of them named in the petition, for the reason that there is a misjoinder of parties defendant. If the Cuyahoga County Building Commission is a proper party defendant to this proceeding, and if it was clear to the court that it had any jurisdiction over that body and the individual members thereof, the court would not have much difficulty in arriving at a conclusion. The court, however, will treat this demurrer as if filed by the Cuyahoga County Building Commission and the individual members thereof.

Such a demurrer, which the court will consider as filed, raises a novel and perplexing question: Can the county of Cuyahoga, as a separate subdivision of the state of Ohio, be sued in this way, that is, could a judgment against the Cuyahoga County Building Commission and its members be enforced against the county of Cuyahoga? Or, in other words, have the plaintiffs any right to implead this body and its members in this action? This raises the whole question of action by and against a county.

It may be said in general terms that a county is a distinct subdivision of the state, organized by itself for judicial and political purposes. Counties are subject to the control and direction of the Legislature, through which the sovereignty of the state is represented and exercised, or, as it is said in *Board* v. *Gates,* 83 O. S., 19, "A county is not a body corporate, but, rather, a sovereign political division, an instrumentality of government clothed with such powers, and such only, as are given by statute, and liable to such extent, and such only, as the statutes prescribe." This will become important when we come to a consideration of

the statute by virtue of which the Cuyahoga County Building Commission was created.

Counties of this state are mere *quasi*-corporations because, perhaps, the state has not, in express terms, declared them to be corporations. They have, however, corporate capacity for particular specific ends; and, within the limits of the power conferred by statute, they are invested with full corporate capacity. Except as restricted by the state Constitution, the legislative power over counties is supreme. The revenue of a county is subject to the control of the Legislature; and when the Legislature directs the application of revenue to a particular purpose, a duty is imposed and an obligation created upon the county. Members of the board of county commissioners are officers of the county, charged with administrative and executive duties, the management of its financial affairs and its police regulations and corporate business. These boards have a perpetual existence; and, although there may be a change in the personnel of the individuals who compose the board, the body remains the same. This will also become important when we come to consider the statute in question.

The board of county commissioners exercises the corporate powers of a county, and, for all financial and ministerial purposes, is the county. This was decided as long ago as the case of *Levy Court* v. *Coroner*, 2 Wall (U. S.), 501. It has been repeatedly held in this state. The board is representative and guardian of the county, having the management and control of its property and financial interests, and has exclusive and original jurisdiction over all matters pertaining to county affairs, except in respect to matters the cognizance of which is exclusively vested in some other officer or person (*Clarke County* v. *Smith*, 108 Ga., 327). At common law, counties could neither sue nor be sued. The right of a county to sue or of a citizen to sue a county is wholly statutory. In some jurisdictions, counties may sue or be sued in their corporate names. In others, Ohio among the rest, they can only be sued in the name of the county commissioners, the board which, to all intents and purposes, is the county.

Section 2408, G. C., provides that "A board of county commissioners may sue and be sued, plead and be impleaded, in any court of judicature, bring and maintain and defend all suits in law or in equity." But this power is limited to the matters and things specified in this statute, although it has been held that the board may bring an action in respect to a matter not mentioned in the statute if it is cognate thereto. See *Commissioners* v. *Noyes*, 35 O. S., 201. A county can neither sue nor be sued, except by express power conferred by statute, and in the manner so expressed; nor can any of the officers of a county, by virtue of such office, sue or be sued except as provided by statute. *Hunter* v. *Commissioners*, 10 O. S., 515. See *State* v. *Piatt*, 15 O., 15.

In the absence of express enabling statutes or a necessary or fair implication from statutes, neither the state nor any of its agencies or agents, acting within the scope of their powers, can be sued by any person; nor can such agents or agencies sue any one concerning any matter falling within the limits of their delegated duties, and for the reason that they are not principals, and therefore all such actions must be brought by or in the name of the state, which is the principal. But the state, acting by and through its Legislature, may, by statute, prescribe for what and in what classes of cases it or they may be used; and the state may also prescribe who may be authorized to represent it by using its name, bringing and carrying on suits for it in the courts of justice. *Commissioners* v. *Noyes, supra.*

If no officer of a county can, by virtue of his office, sue or be sued except as provided by statute, as laid down in *Hunter* v. *Commissioners*, 10 O. S., 515, it would seem that the Cuyahoga County Building Commission, as a body, and the individual members composing it, can not be sued, even if it is admitted that they are officers of the county, unless the statute creating this commission expressly authorizes or provides that they may be sued. Of course the right to sue carries with it the burden of being sued; and the burden of being sued should also carry with it the right or ability to sue. No one will contend that the

Cuyahoga County Building Commission has authority, under the statute creating it, to bring suit against any person.

In *State* v. *Brennan,* 49 O. S., 33, it was held, practically if not expressly, that when a person is clothed—not as an incidental or transient authority, but for such time as denotes duration and continuance—with independent power to control the property of the public, and with public functions to be exercised in the interests of the people, the service to be compensated by a stated yearly salary and the occupant having a designation or title, the position so created is a public office.

Section 1 of Article X of the Constitution provides:

"The General Assembly shall provide by law for the election of such county and township officers as may be necessary."

It was held in *State* v. *Thrall,* 59 O. S., 368, that a public office, within the meaning of this section of the Constitution, can not be created by appointment. And in 49 O. S., 33, *supra,* it was held that such appointment was void.

The statute under consideration, and by virtue of which the Cuyahoga County Building Commission was created, was passed April 18, 1904 (97 O. L., 111). It was amended March 8, 1906 (98 O. L., 53). The amendment, however, relates only to the method of compensating the members of the building commission and limiting the amount of such compensation. The act had already been passed upon by our Supreme Court in the case of *McKenzie* v. *State,* 76 O. S., 369, and was declared by the court to be "not a special statute," because, no matter where or how it originated, it is not only general in its terms, but it is an act of a general nature operating uniformly throughout the state.

At the time of the passage of this act, Sections 794 to 799, inclusive, of the Revised Statutes also provided for the erection of court houses and county buildings. As the Supreme Court construed the two modes of erecting county buildings, it recognized that there were two independent modes provided for the erection of court houses, one mode under the supervision of the county commissioners upon plans submitted to them, the clerk of

the court, the sheriff, the probate judge, and one person to be appointed by the judge of the court of common pleas. A different mode, however, and a complete and independent scheme, as our Supreme Court has said, is provided for in the act now under consideration. It is hardly necessary to discuss the first mode or scheme at this time, as it seems that these statutes, that is, Sections 794 to 799, R. S., so far as I am able to determine from the limited examination I have been able to give the matter, have been repealed or greatly modified by the codifying commission in its report to the Legislature January 3d, 1910. So that at present there is but the single mode provided in the act now under consideration. This act is now known as Sections 2333 to Section 2342, inclusive, General Code. Under this act, every time the electors determine in the affirmative the question of issuing bonds for the construction of a court house, until its completion, as the Supreme Court in the McKenzie case says, "the entire business of carrying out the purpose of building a court house is placed within the control of the building commission," that is, the entire business of erecting and constructing the court house, according to the plans and specifications which are approved, is placed within the control of the building commission. The commission must first adopt plans, specifications and estimates; secondly, invite bids and award contracts; third, determine all questions connected therewith, that is, with the erection, construction and building of the court house.

There is undoubtedly conferred upon the commission, in general terms, all the power and authority which the former statutes conferred upon the county commissioners, and perhaps more, so far as the building and constructing of the court house is concerned; and the commission has the broad power "to determine all questions connected therewith"; but the act nowhere provides that this commission shall have any authority to sue or be sued, or to plead or be impleaded.

The act itself is not wholly new. On February 2, 1893, the Legislature of Ohio authorized the building of a new court house for Wood county. Section 5 of that act is in many respects sub-

stantially the same as Section 1 of the act now under considera-
tion. Under the special act for the building of the court house
in Wood county, four competent freeholders were to be appointed
by the circuit court, not more than two of which freeholders
should be of the same political party; and the act says: "They
are hereby authorized to act and vote with said commissioners
in procuring, making and approving plans, estimates and speci-
fications for said court house." The four competent freeholders
were to act and vote with said commissioners. Under the act
now under consideration it is provided that the four suitable
and competent freeholders, or freehold electors, shall, in con-
nection with the county commissioners, constitute a building
commission. We think the language is susceptible of the same
construction as in the act relating to the Wood county court
house. The Wood county act, however, did not make it man-
datory upon the circuit judge to fill a vacancy arising in the
committee or commission, but provided that said judge or judges
are authorized to fill any vacancy arising should they deem it
necessary and advisable to do so. In the act under considera-
tion, however, it is made mandatory upon the judges of the court
of common pleas to fill a vacancy in the county building com-
mission, should one occur.

In *Board of County Commissioners of Wood County* v. *Robert
Pargillis*, 10 O. C. C., 366, this special act was construed, Judge
Haynes rendering the opinion. It seems that the county com-
missioners of Wood county wholly ignored the competent free-
holder members of the commission or committee, and proceeded
to award contracts on its own volition as a board of county com-
missioners. A demurrer was filed to the petition in the court of
common pleas, which was overruled, and the case was taken to
the circuit court, where the court of common pleas was reversed.
In the opinion of the circuit court the question turned upon
whether these freehold members of the building committee or
commission were public officers, and if they were, they should
therefore be elected, and their appointment was in contravention
of Section 1, Article X of the Constitution. In passing upon
this question, Judge Haynes, at page 392, says:

"The only case that I think we have been referred to in regard to the question of officers, and the definition of the word officer, is that of *State, ex rel,* v. *Brennan,* 49 O. S., 33. In that case there is a discussion, and perhaps a definition, of what is meant by the word officer as used in that article of the Constitution; and, without going through the decision or reading or discussing it, it is perhaps sufficient for me to say that, in the opinion of a majority of the court, this building committee did not possess the qualifications nor have they the character of public officers; that they are in fact what they are denominated, a committee or commission for the purpose of acting with the county commissioners, of voting with them upon certain questions in relation to the building of a court house. While they exercise powers that are exercised by public officers, they do not have that continuity of office which it seems to us is necessary to constitute and make them public officers. They are appointed for a definite purpose, and when that purpose is carried out and that duty performed, their rights and duties terminate."

This is essentially true of the Cuyahoga County Building Commission. This commission was appointed for a definite purpose, that is, to erect and construct a court house for this county; and when that purpose is carried out and that duty performed, their rights and duties terminate. It can not be said, in any sense of the word or term, that they have the character of public officers. As Judge Haynes said, they are in fact what they are denominated, a committee or commission for the purpose of acting with the county commissioners and of voting with them upon certain questions, or upon all questions in relation to the building of the court house. They are not a body, as Judge Haynes said, "which is required to continue in office with succession, to hold their offices until their successors are elected and qualified, or to continue for the purpose of carrying out the general governmental duties of the county."

In the case of *Jones, Auditor,* v. *Commissioners of Lucas County,* 57 O. S., 189, it was held that the county commissioners "may pass upon and adjudicate claims against the county for services in a matter which, under the statutes, may be the subject of a legal claim against the county."

The claim of the plaintiffs in this case is for services, as well as material, furnished the county under and by virtue of the statutes of the state; and their claim against the county, if they have one, is the subject of a legal claim, and that claim is against the county; and as the county can not be sued *eo nomine,* it must be sued through the county commissioners. In other words, the Cuyahoga County Building Commission was the mere agent of the state and the county in erecting the court house, and is in no sense the principal.

This statute, that is, the statute creating this commission, has a definite purpose and .object. The office of county commissioner is one of the most important in the state; and the qualifications of a county commissioner ought to be such as will enable him to perform successfully the duties of that important office. In electing county commissioners, however, this matter is very often overlooked, and persons are elected as county commissioners, quite frequently, through political influence, and not because they have the special qualifications which would adapt them to the performance of the duties imposed by law. Undoubtedly, therefore, the Legislature was of the opinion that in the expenditure of vast sums of money in the erection of a large and substantial court house, some check should be placed upon the county commissioners and some aid and assistance given to them in the performance of their duties; and it was undoubtedly supposed that the judges of the court of common pleas, in the selection of these freehold members of the commission, would exercise the greatest caution and discretion in such selection, and appoint members to act with the board of county commissioners, and constitute with them a building commission, who are men of wide experience, known integrity and honesty, and specially adapted for the purpose in view. But we are firmly of the opinion that it was not the intention of the Legislature to authorize these citizen members to act as public officers, nor does the statute make them public officers; and, not being public officers and having no authority, under the statute which created them, to sue or be sued, to plead or be impleaded in any case, we do not believe they should be made parties defendant herein,

either as a body or as individuals; and for that reason the demurrer will be sustained.

. It will be noticed, however, that the county auditor and county treasurer are also made parties defendant; and the prayer of the petition, so far as these parties are concerned, is that the auditor be required to draw his warrant on the county treasurer for the amount of any judgment that might be rendered, and that the treasurer be required to make payment thereof.

It is a well-known presumption of law that public officers will discharge their duties or the duties incumbent upon them; and the court has no right to anticipate that, in the event of a judgment being rendered against the county in this case, the county auditor would refuse to draw his warrant, or that the county treasurer would refuse to pay such warrant when presented; and we therefore hold that they are not proper parties in this litigation, and that the action should proceed wholly against the county commissioners. This will require, unfortunately, perhaps, the redrafting of the petition, at least so far as the first page or two is concerned; but if the court is right in its contention, it is better to do this at this time than to have it done afterwards.

I do not think it at all necessary to retain the building commission for the purpose of a holding or ruling by the trial court upon the question of the acceptance of the work as a whole or in part as it progressed. If the court house as designed by the plans, specifications and estimates was, as a matter of fact, completed and accepted by the building commission, the county is bound by that acceptance, as it is bound by every act of the building commission done in conformity with the statute which created it; and this is true whether the Commission is still in existence or whether its powers and functions have ceased and are at an end. If the contention of the plaintiffs, that the building was completed and accepted, be true, the commission is *functus officio*, if that phrase may be applied to a body of this character. If the members of the building commission have been derelict in the performance of their duties or have been unfaithful to the trust reposed in them and confided to them, and injury has resulted to the county from such dereliction of duty or

malfeasance in its performance, they may be liable, on their bonds, not to the contractors or any other person, but to the county or state, which called the commission into existence for the specific purpose, and no other, of constructing the court house according to the plans, specifications and estimates approved by the commission and subsequently changed or altered as provided by the statute creating and governing the conduct of said county building commission.